IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CEDRIC JACKSON (AIS# 151841),  :

  Plaintiff,     :

vs.         :   CIVIL ACTION 12-0110-WS-N

JONATHAN LEE,    :

  Defendant.    :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. (Doc. 13).[1] This action has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) and is now before the Court on: (1) Defendant's Special Report (doc. 34-37), Answer (doc. 28), and Memorandum (docs. 49-50) which have been converted to a motion for summary judgment (doc. 39); (2) Plaintiff's various responses in opposition thereto (docs. 52, 65); and (3) Defendant's reply (doc. 66). Upon consideration of these documents and all other pertinent portions of the record, it is recommended that Defendant's motion for summary judgment be granted, in part, and denied, in part as follows: (1) Defendant Lee's motion for summary judgment be

---

[1] Plaintiff's original 70-page complaint was filed on February 20, 2012, per the mailbox rule. (Doc. 1). See Washington v. U.S., 243 F.3d 1299, 1301 (11th Cir. 2001) (Under the "mailbox rule," "a prisoner's *pro se* [] motion is deemed filed the date it is delivered to prison authorities for mailing."). However, the Court screened the complaint and found it to be deficient and ordered Plaintiff to file an amended complaint on the Court's § 1983 complaint form. (Doc. 5). Thereafter, Plaintiff filed a 78-page amended complaint (doc. 8) that was also found to be conclusory and void of essential details to state a claim, and the Court again afforded Plaintiff an opportunity to file a second amended complaint on the Court's form. (Doc. 10). Plaintiff complied with the Court's order by filing the complaint currently before the Court. (See Doc. 13).

granted to the extent that Plaintiff's claim for illegal taking of money be dismissed; (2)

Defendant Lee's affirmative defense of qualified immunity be denied, and (3) Defendant

Lee's motion for summary judgment as to Plaintiff's claims of excessive force and

involuntary hospitalization be denied.

## I.    BACKGROUND AND FACTS.

According to Plaintiff Jackson,[2] he was walking on the downtown streets of

Mobile, Alabama, on February 25, 2011, to attend a Mardi Gras Parade,[3] when he was

stopped in the middle of the street by a black male driving a white sport utility vehicle

("S.U.V.") and asked directions on where to park his vehicle for the parade.  (Doc. 13 at

18-19; Doc. 36-2 at 3 (deposition of Plaintiff)).   As Plaintiff responded to the motorist's

questions, he noticed "several persons watching [him] from different angles around the

S.U.V."  (Id. at 19).  Plaintiff contends he felt threatened and nervous and began to walk

away from the S.U.V.  (Id.; Doc. 36-2 at 5 (deposition of Plaintiff)).  The men observing

Plaintiff began to follow him; unbeknownst to Plaintiff, these men were undercover

narcotic investigators with the City of Mobile, Alabama Police Department.  (Doc. 13 at

19).  Plaintiff states he began to run when he realized he was being followed, and the

---

[2]    On summary judgment, the evidence and the inferences from that evidence must be viewed in the light most favorable to the nonmovant. See Jean-Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010).  Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

[3]    Plaintiff admits that he had been drinking alcohol and smoking marijuana earlier in the day on February 25, 2011, but does not indicate the quantities of either.  (Doc. 36-2 at 3 (deposition of Plaintiff)).  The presence of marijuana in Plaintiff's system was confirmed by the hospital laboratory tests received on February 25, 2011 following the incident subject of this report; however, the results are negative for the presence of alcohol or ethanol.  (Doc. 8 at 49-52).

undercover agents gave chase to Plaintiff.  (Id.).  The foot chase continued for approximately two or three blocks.  (Id.).  Upon capture, Plaintiff alleges the undercover officials kicked and punched him in the face and ribs,[4] while other officers drew their guns, and handcuffs were eventually secured on Plaintiff while he was lying face down on the ground.  (Id. at 20).

Following the seizure of Plaintiff, two police officers riding bicycles arrived at the scene and inquired about the situation (specifically, the bloody condition of Plaintiff), to which the undercover officers "laughed and said, he fell." (Id.).  The officers on bicycles responded, "[Mobile] Metro Jail is not going to take him [looking] like that." (Id. at 20).  Thereafter, the undercover officers carried Plaintiff to his neighbor's water facet, rinsed the blood off of his face, and then searched his person.  (Doc. 13 at 21).  The undercover officers discovered money on Plaintiff during the search and confiscated the funds.[5] (Id.).  Emergency medical response teams were called to the scene to examine Plaintiff.  Thereafter, Plaintiff was unhandcuffed and transported to the hospital by ambulance without police escort. (Id.).  Prior to leaving the scene, however, Defendant Jonathan Lee gave Plaintiff a piece of paper with Defendant's name and phone number written on it and told Plaintiff to call him.[6] (Id.).

---

[4]     Plaintiff claims that he was beaten by Defendant and other officers for five minutes.  (Doc. 22).

[5]     Defendant's affidavit, the affidavits of other police officers, and all court records detail that $860.00 was confiscated from Plaintiff during the search incident to his arrest. (Docs.  36-1 at 3; 50-2 at 3; 50-3 at 3; 50-4 at 3; 8 at 71-72).  However, the amount of currency seized is in dispute, as Plaintiff argues the undercover agents took $1,400.00 from him.  (Doc. 13 at 21).

[6]     Plaintiff did not attempt to call Defendant Lee, instead he gave the sheet of paper with Defendant's name and phone number on it to his attorney, Michael R. Kaoui.  (Id. at 21).

Defendant Lee contests Plaintiff's version of the facts. Lee submits that he was working as an undercover narcotics investigator during a Mardi Gras parade in downtown Mobile, Alabama on February 25, 2011, when he saw Plaintiff holding a clear plastic bag containing a green substance believed to be marijuana, and he and Officer Jeffery Stone observed Plaintiff conduct what appeared to be a drug sell with a black male in a white S.U.V. (Doc. 36-1 at 2-3). Defendant Lee and Officer Stone approached Plaintiff to further investigate the situation, and, as they neared Plaintiff, Officer Stone identified himself as a police officer. (Id. at 3). Plaintiff then began to run from the undercover investigators, and Defendant Lee, Officer Stone, "and other officers then gave chase to the Plaintiff, identifying [them]selves as police officers and ordering him to stop running." (Id.). Defendant contends Plaintiff:

> continued on a long foot chase and began to lose his footing as he turned on Dearborn Street from State Street. The Plaintiff fell 3-4 times while attempting to elude officers. The fall caused injuries to the Plaintiff's person.

(Id. at 3). Defendant Lee also asserts that during the foot chase Plaintiff discarded the plastic bag he was seen carrying by throwing it along Dearborn Street. (Id.). Defendant Lee, Officer Stone, and Officer Jimmy Bailey reached Plaintiff and attempted to place him under arrest; however, Plaintiff "resisted by pushing away [Defendant Lee's] hands as [he] was trying to handcuff the Plaintiff." (Id.). Defendant Lee admits to a "brief struggle" occurring between himself and Plaintiff while attempting to secure the handcuffs on Plaintiff.[7] (Doc. 50-1 at 2). In response to the struggle and in an effort to

---

[7]    Defendant Lee submitted the affidavits of other officers who were present at the scene on February 25, 2011 and witnessed the arrest of Plaintiff. The affiants attest to Plaintiff resisting arrest. (See Docs. 50-3 at 3 (affirmed witnessing "a brief struggle" between Defendant Lee and Plaintiff while handcuffs were being placed); 50-4 at 3

control Plaintiff and complete the arrest of Plaintiff, Defendant Lee states he "struck the Plaintiff twice in the side in an effort to restrain the Plaintiff," and Plaintiff was eventually secured in handcuffs. (Id.). Officer Stone then retrieved the plastic bag Plaintiff tossed during the foot chase; the bag contained 15 grams of marijuana and 5 grams of crack cocaine. (Id.). Plaintiff was charged with possession of marijuana (DC 2011 002951.00), possession of cocaine (DC 2011 2952.00), resisting arrest (DC 2011 002953.00), attempting to elude (DC 2011 02953.00), and loitering (DC 2011 2955.00).[8] (Id., Doc. 50-6 at 3-4, 6-7, 9; Doc. 50-5 at 2-4; Doc. 8 at 56, 60). It was also discovered that Plaintiff had an active felony warrant for his arrest related to a charge of second-degree assault. (Doc. 36-1 at 4).

Emergency medical crews were notified of Plaintiff's injuries and responded to the scene to examine Plaintiff,[9] and the decision was made to transport Plaintiff by ambulance to the hospital for further treatment. (Id.). Lieutenant Randy Jackson advised Defendant Lee to release Plaintiff to the medical personnel for evaluation. (Id.). Upon release from the investigator's custody, Defendant Lee gave "Plaintiff a piece of paper with [his] name and phone number on it and asked him to call [Lee]. [Lee] hoped that he

---

(same); and 36-3 at 3 (affirming Plaintiff "resisted arrest")).

[8]     Contrary to Defendant's allegations and the charges brought against Plaintiff on February 25, 2011, the arrest report for said date notes (through check marked boxes) that Plaintiff was sober at the time of arrest, that Plaintiff did not resist arrest, and that Plaintiff suffered no injuries during the arrest. (Doc. 8 at 56).

[9]     Mobile Fire and Rescue as well as American Medical Response arrived at the scene to examine Plaintiff. (Docs. 35-1; 45-1 at 2-3). American Medical Response examined Plaintiff and noted a laceration to Plaintiff's left ear and Plaintiff complained of pain in his right side. (Doc. 35-1 at 7, 10). The undercover investigators informed the paramedics that Plaintiff was "running from police when Plaintiff tripped on curb and landed on R side;" however, once inside the ambulance, Plaintiff informed the emergency medical service personnel that the police assaulted him. (Id. at 7).

might have information useful to the Narcotics Division. Additionally, the Plaintiff was instructed to surrender himself upon discharge from the hospital." (Id.).

Due to the altercation on February 25, 2011, between Plaintiff and Defendant Lee, Plaintiff suffered two broken right ribs, confirmed by x-ray reports, and a laceration to his left ear that required four sutures. (Doc. 8 at 44, 46-48). Plaintiff was discharged from the hospital with instructions to take Motrin for the pain and to return to the hospital if he experienced any neurological symptoms. (Doc. 45-2 at 21). Plaintiff did not surrender himself to the City of Mobile Police Department upon discharge from the hospital, but was taken into custody on April 8, 2011 when arrested on new charges of possession of cocaine and possession of marijuana. (Doc. 36-2 at 9). Plaintiff ultimately plead guilty to the April 8, 2011 charges in exchange for having the February 25, 2011 charges *nol prossed*. (Id. at 62-63).

Plaintiff filed this § 1983 action against Defendant Lee and "other officers" who were present during the incident subject of this action.[10] (Doc. 13 at 4). Plaintiff alleges

---

[10]    Defendant Jonathan Lee is the only named individual in this action. Ashley Rich and Geoffrey Alexander were originally named as defendants but were voluntarily dismissed by Plaintiff from this action on May 1, 2013. (Doc. 22; Doc. 23; Doc. 13 at 11). For the following reasons, the Court will recognize only Jonathan Lee as the sole defendant in this action.
       While Plaintiff seeks to sue "other officers" present during his apprehension on February 25, 2011, he fails to sufficiently name or describe another officer besides Defendant Lee. The number of John Doe defendant officers Plaintiff seeks to sue varies throughout the complaint. Plaintiff originally claims *five* "other officers" were present at the scene on February 25, 2011 (Doc. 13 at 4); Plaintiff then states he is suing *six* "unknown agents" (id. at 5); Plaintiff goes on to allege that *seven* "unknown undercover special drug force narcotic officer[s]" are liable for failing to intervene when excessive force was used against him. (Id. at 10). Plaintiff does attempt to particularize his allegations in his Motion to Supplement Defendants. (Doc. 22). In his motion filed April 24, 2013, a year after his original complaint was filed, Plaintiff clarifies that unnamed defendants 1 through 5 where undercover investigators who participating in the alleged assault, that defendant 6 was an officer who arrived on bicycle and witnessed a portion of

6

Defendant Lee used excessive force against him and the "other officers" failed to intervene in violation of the Fourth and Fourteenth Amendments. (Doc. 13 at 4-5, 10). He also claims defendants are liable for involuntary hospitalization that occurred subsequent to his arrest. (Id. at 17, 26). Furthermore, Plaintiff alleges "illegal taking of money" from him incident to his arrest. (Id. at 25, 27-30). Plaintiff sues Defendant in his official and individual capacity and as relief seeks compensatory, punitive, and nominal damages, along with court costs and attorney fees. (Doc. 13 at 7). After review of the pleadings and submitted evidence by the parties, this action is ripe for consideration.

## II.    SUMMARY JUDGMENT STANDARD.

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court

---

the alleged beating, and that defendant 7 was a bicycle officer who arrived subsequent the alleged assault and notified officers that Plaintiff would not be admitted to the jail in his current condition. However, the Court has previously denied Plaintiff's motion to add unidentified defendants and such defendants were terminated from the action on May 1, 2013. (See Doc. 23).

While the Court recognizes its duty to give a *pro se* plaintiff leeway in pleading, Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008), as a general rule, fictitious-party pleading is not permitted in federal court. See, e.g., New v. Sports & Recreation, Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997). The exception to this rule is when a plaintiff's description of the unknown person "is so specific as to be 'at the very worst, surplusage.'" Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted). This is not the case here.

Plaintiff was granted discovery motions by this Court for production of documents that would have allowed him to properly name the defendants he believed to be responsible for the violations against him. (Docs. 29 ). However, Plaintiff has failed to amend his pleadings to reflect the identity of his intended defendants. It is the opinion of the undersigned that Plaintiff's failure to identify the Doe defendants, despite ample time for discovery and supplementation of his pleadings, requires following binding precedent and disallowing the fictitious-party, unnamed defendants and dismissing the claims against them. See Moulds v. Bullard, 345 F. App'x 387, 390 (11th Cir. 2009) (Dismissal upheld where plaintiff was afforded the opportunity through granted discovery request to learn the defendants' names and failed to identify them.). For these reasons, Defendant Lee is the sole defendant in this § 1983 action.

authority under Rule 56 to render "judgment as a matter of law" to a party who moves for

summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court

shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." In Celotex

Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the

Supreme Court held that summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact. . . ." However, all of the

evidence and factual inferences reasonably drawn from the evidence must be viewed in

the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S.

144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jackson v. BellSouth Telecomms., 372

F.3d 1250, 1280 (11th Cir. 2004).

Federal Rule of Civil Procedure 56(e) further provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party seeking summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of

the 'pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. See Stabler v. Fla. Van Lines, Inc., Civ. A. No. 11-0103-WS-N, 2012 U.S. Dist. LEXIS 1637, 2012 WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when "a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." AGSouth Genetics, LLC v. Cunningham, No. CA 09-745-C, 2011 U.S. Dist. LEXIS 51790, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011).

## III.    ANALYSIS.

### A.    Claims against officers in their official capacities.

This 1983 action is brought against Defendant Lee in his official and individual capacity. (Doc. 13 at 16). When an officer is sued under § 1983 in his official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (quoting Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (internal quotations omitted)).

> Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents. See Kentucky, 473 U.S. at 165-66, 105 S. Ct. at 3105; Brandon v. Holt, 469 U.S. 464, 471-72, 105 S. Ct. 873, 877-78, 83 L.Ed.2d 878 (1985); Monell v. Dep't of Soc. Servs., 436 U.S. 658 at 691, 98 S. Ct. 2018 at 2036, 56 L. Ed. 2d 611 (1978); Farred v. Hicks, 915 F.2d 1530, 1532 (11th Cir.1990). Consequently, a plaintiff cannot rely on a *respondeat superior* theory to hold a municipality liable for individual actions of its officers. Monell, 436 U.S. at 691, 98 S. Ct. at 2036; Hearn v. City of Gainesville, 688 F.2d 1328, 1334 (11th Cir. 1982). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." Monell, 436 U.S. at 691, 98 S. Ct. at 2036. Instead, in order to recover against a municipality, a plaintiff must establish that the alleged racial discrimination or harassment occurred pursuant to a custom or policy of the municipality. Id. at 694, 98 S. Ct. at 2037; Gilmere v. City of Atlanta, 774 F.2d 1495, 1503 (11th Cir. 1985), cert. denied, 476 U.S. 1115, 106 S. Ct. 1970, 90 L. Ed. 2d 654 (1986); Hearn, 688 F.2d at 1334.
>
> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond). See Kentucky v. Graham, 473 U.S. at 166, 105 S. Ct. at 3105; Brandon v. Holt, 469 U.S. at 471-72, 105 S. Ct. at 877-78. . . .

Busby, 931 F.2d at 776. Based on the above, the Court finds that Defendant Lee is immune from any suit for damages in his official capacity.

**B. Qualified Immunity.**

In response to Plaintiff's complaint, Defendant Lee, asserts that he is entitled to qualified immunity. (Doc. 28 at 3). Qualified immunity protects government actors from liability, when performing discretionary functions, to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The defendant has the initial burden of proving that he acted within the scope of his discretionary authority. Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994). To determine whether a defendant acted within the scope of his discretionary authority, the court must consider whether the actions of which the plaintiff complains "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" Id. at 1566 (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)). Here, it is clear that Defendant Lee was acting within the course and scope of his discretionary authority as a police officer, and more specifically as an undercover narcotics investigator, in effecting Plaintiff's arrest. See Burnett v. Unified Gov't of Athens-Clarke County, Ga., 395 F. App'x 567, 568 (11th Cir. 2010) ("'[T]here can be no doubt that [the defendant police officer] was acting in his discretionary capacity when he arrested' the plaintiff.") (citations omitted).

After the defendant meets the burden of proving that he acted within the scope of his discretionary authority, the burden shifts to the plaintiff to prove that the actions of the defendant violated clearly established constitutional rights of which a reasonable person would have known. See Harlow, 457 U.S. at 818; Lassiter, 28 F.3d at 1150 n.3. As explained by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), the "threshold question" to determine whether

Defendants are entitled to qualified immunity is as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendants'] conduct violated a constitutional right?" Saucier, 533 U.S. at 201; see also Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all").

### C.     Fourth Amendment.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694 n.3, 61 L. Ed. 2d 433 (1979)). The analysis of a claim brought under § 1983 thus begins by identifying the constitutional amendment that protects against the alleged deprivation. 490 U.S. at 394, 109 S. Ct. at 1870.

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. (citation and footnote omitted) In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive government conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. See Tennessee v. Garner, *supra*, 471 U.S. 1 at 7-22, 105 S. Ct. 1694 at 1699-1707, 85 L. Ed. 2d 1 (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); Whitley v. Albers, 475 U.S. 312, 318-326, 106 S. Ct. 1078, 1083-1088, 89 L. Ed. 2d 251 (1986) (claim of excessive force to

subdue convicted prisoner analyzed under an Eighth Amendment standard).

> Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.

Id. at 394, 109 S. Ct. at 1870-71. Accord Cottrell v. Caldwell, 85 F.3d 1480, 1490, 1492 (11th Cir. 1996) (holding that the Fourth Amendment controls a claim of excessive force arising from an arrest and that "claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause" (emphasis added)); Graham, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment. . ."). And "all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should by analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395.

It is undisputed that Defendant seized Plaintiff, irrelevant of the fact that Defendant did not take Plaintiff to jail, on February 25, 2011.[11]  Consequently, it is clear that Plaintiff's claim arose during the course of a seizure of Plaintiff and the Fourth

---

[11]  "[W]hen the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Florida v. Royer, 460 U.S. 491, 497-98, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) ("If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.").

Amendment is the specific constitutional right allegedly infringed upon and challenged in this action.[12]

### D.     Claims of Excessive Force.

Plaintiff claims that Defendant Lee violated his constitutional rights by using excessive force against him while arresting him. (Doc. 13 at 4).  With regard to evaluating Fourth Amendment excessive force claims, the Eleventh Circuit has stated:

> The Fourth Amendment right to be free from unreasonable seizures includes the right to be "free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person." Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quotation marks omitted). "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Id. at 1266 (quotation marks omitted).  The reasonableness of the force used is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "'must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.'" Carr v. Tatangelo, 338 F.3d 1259, 1267-68 (11th Cir. 2003) (quoting in part Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 . . . (1989)).

Nicarry v. Cannaday, 260 F. App'x 166, 169-70 (11th Cir. 2007).  "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."

Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (citation omitted).  In

---

[12]     Because there is clear evidence of a Fourth Amendment seizure, the Court need not decide in this recommendation whether a reasonable jury could find Defendant's conduct "shocked the conscience" in violation of the Fourteenth Amendment.  See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 848-50, 855 (1998) (expounding on the difficult test of analyzing and determine behaviors that "shock the conscience" in violation of the right to due process).

Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000), the Eleventh Circuit held that "[t]he application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Accord JB v. Amerson, 519 F. Appx. 613 (11th Cir. 2013); Woodruff v. City of Trussville, 434 F. App'x 852, 855 (11th Cir. 2011).  In Woodruff, the plaintiff raised claims of unlawful arrest, excessive force, and malicious prosecution in violation of the Fourth Amendment against the City of Trussville and two police officers stemming from a traffic stop. The plaintiff alleged that one of the officers "punched him in the face, pulled him from his car, threw him to the pavement, causing him to strike his head, and handcuffed him without telling him the nature of the charges for which he was under arrest." Woodruff, 434 F. App'x. at 853. The Eleventh Circuit affirmed the district court's order granting summary judgment in favor of the defendants on each of the plaintiff's claims, stating that "[t]he kind of force alleged by Woodruff—including [defendant officer] punching Woodruff in the face, forcefully removing him from his car, and slamming him on the ground—even when construed in the light most favorable to Woodruff, constituted only *de minimis* force." Id. at 855.  See also Croom v. Balkwill, 645 F.3d 1240, 1252-53 (11th Cir. 2011) (no Fourth Amendment violation when officer forced an unarmed, physically weak, elderly woman to the ground and held her there with a foot or knee on her back for ten minutes); Nolin, 207 F.3d at 1258 (concluding that only *de minimis* force was used when officer grabbed the plaintiff, shoved him a few feet against a vehicle, pushed his knee into plaintiff's back, pushed plaintiff's head against the van, searched plaintiff's groin area in an uncomfortable manner, and placed plaintiff in handcuffs, all resulting in only minor bruising); Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (no

constitutional violation when officer "slammed" plaintiff against a wall, kicked his legs apart and required him to raise hands above his head); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (no Fourth Amendment violation when officer unnecessarily pushed an already-handcuffed adult male into a wall).  Furthermore, the law is clear that "[a] law enforcement officer receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." Brown v. City of Huntsville, 608 F.3d 724, 738 (11th Cir. 2010).

In evaluating the objective reasonableness of the force used against Plaintiff, the Court first looks "at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance[s] the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009).  The factors prescribed in Graham dictate that the Court consider the degree of force used measured against "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; see also, Oliver, 586 F.3d at 905.  Second, the Court will consider, "'(1) the need for the application of force, (2) the relationship between the need and the amount of force used, [and] (3) the extent of the injury inflicted." Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986), abrogated in part by Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (recognizing that Leslie's fourth factor, the subjective inquiry into the officer's motive, was invalidated by Graham)); see

also Lee v. Ferraro, 284 F.3d 1188, 1198 n.7 (11th Cir. 2002) (discussing the continuing validity of the other three Leslie factors).

In this case, a suspected drug sell and drug possession constitutes severity to make the first Graham factor weigh against Plaintiff. Defendant Lee observed Plaintiff possessing a plastic bag with a substance he suspected to be marijuana and make what appeared to be a drug transaction with a black male in a white S.U.V. in an area of downtown Mobile, Alabama that Plaintiff admits is known to be a high crime location. (Doc. 13 at 19). Also, because the Court must give deference to the split second decisions that officers on the scene are obligated to make, the second Graham factor of Plaintiff posing an immediate threat weighs against Plaintiff. The Court acknowledges that a reasonable officer at the time Defendant began pursuit of Plaintiff would have been unaware of the dangerousness of Plaintiff; for instance, did Plaintiff possess a gun, did Plaintiff have accomplices within viewing site prepared to assist him if he were apprehended by officers, was Plaintiff in an altered state due to potential illicit drug use? These questions are all realistic possibilities that Defendant could have encountered under the circumstances that occurred on February 25, 2011. Thus, Defendant Lee had to draw on his field experience to calculate the potential danger posed in a given investigatory or arrest situation. Therefore, an objectively reasonable officer would have approached the arrest, as Defendant did, with caution and safety in mind, knowing that Plaintiff could have been armed and dangerous. For this reason, the Court finds the second Graham factor is tilted in Defendant Lee's favor as well.

The third Graham factor in determining whether or not Plaintiff was actively resisting arrest or attempting to evade by flight raises legal and factual questions.

Plaintiff claims that the "watchers," who never identified themselves as police officers, began to follow him; feeling threatened, Plaintiff then ran and a foot chase ensued with Defendant and other undercover officers.  By remaining anonymous as to his legal authority, the Court recognizes Defendant Lee never gave Plaintiff the opportunity to comply with requests or orders.  Clearly a civilian who believes he is being chased by unknown "watchers," would be apt to run away or escape the presumed threat.  On the other hand, the identification of an undercover investigator as a police officer would, more often than not, cause a civilian to submit to or obey an officer's commands, or at least alert him or her to the fact that they are disobeying one with legal authority.  While non-identification of Defendant as an officer tilts the scales in Plaintiff's favor, Defendant Lee opposes Plaintiff's claim and contends that Officer Stone did, in fact, identify himself as a police officer as they initially approached Plaintiff, and again they identified themselves as police while engaged in the foot chase and ordered Plaintiff to stop running.  This discrepancy regarding identification is significant.  For if the jury credited Defendant Lee's evidence, it could find the Defendant thought it necessary to use force against Plaintiff to defuse a potentially dangerous situation and that any other officer in that situation would have also found it objectively reasonable as well.

Also leaning in favor of Defendant Lee is the uncertainty of the law in requiring identification of an officer prior to executing an arrest in public.  Specifically, there is supporting case law that uncover police officers need not identify themselves before "carry[ing] out an arrest in public, even when self-identification might have obviated the need to use force."  Atkinson v. City of Mt. View, 709 F.3d 1201, 1217 (8th Cir. 2013) (dissent) (citing Catlin v. City of Wheaton, 574 F.3d 361 (7th Cir. 2009).  In Catlin, the

Seventh Circuit determined after a broad review of the law, "it is far from clearly established that the Fourth Amendment requires police officers to identify themselves in the course of carrying out an arrest in a public place." 574 F.3d at 369. After substantial research, this Court has found few cases on point and no indication that identification of an officer is *required* prior to a public arrest. Therefore, even accepting as true Plaintiff's assertion that Defendant Lee did not identify himself as a police officer, Defendant may still be afforded qualified immunity from suit because the law requiring identification prior to arrest is not clearly established.

Tilting the scales further in favor of Defendant Lee on the third <u>Graham</u> factor is the undisputed fact that once Defendant reached Plaintiff and seized him, there was a "brief struggle" to secure handcuffs on Plaintiff. (Doc. 50-1 at 2). Defendant Lee states once he and Officers Stone and Bailey reached Plaintiff, Plaintiff "resisted [arrest] by pushing away [Defendant Lee's] hands as [he] was trying to handcuff the Plaintiff." (Doc. 36-1 at 3). In response to the struggle and in an effort to control Plaintiff and complete the arrest of Plaintiff, Defendant Lee states he "struck the Plaintiff twice in the side in an effort to restrain the Plaintiff." (Doc. 50-1 at 2). And after ample opportunity to oppose or respond to Defendant's claims and version of events, Plaintiff has failed to refute Defendant's assertion that he resisted arrest and a struggle ensued. Additionally, there is no claim by Plaintiff that any attack occurred after he was handcuffed; once secured in the handcuffs, no further force was used on Plaintiff. Taking as true the uncontested information contained in affidavits and the record, the Court determines that Plaintiff fled, albeit unknowingly, from the police as they attempted to approach him and did not submit to being handcuffed after police captured him. Consequently, the Court

reasons that Plaintiff was resisting arrest, and the third <u>Graham</u> factor weighs against Plaintiff. Thus, each of the three <u>Graham</u> factors weigh in favor of Defendant Lee, even if only by a close margin.

Moving on to the Eleventh Circuit's factors in determining whether or not excessive for was used, the Court will consider "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, [and] (3) the extent of the injury inflicted." <u>Leslie</u>, 786 F.2d at 1536. As discussed above, there was an obvious need for some use of force as Plaintiff had just completed a suspected drug deal, was possessing a bag containing drugs, ran from police, and then struggled and resisted arrest once captured by police. A suspect is "not protected against a use of force that is necessary in the situation at hand." <u>Jean-Baptiste</u>, 627 F.3d at 821 (citations and internal quotation marks omitted); <u>see, e.g.</u>, <u>Flowers v. City of Melbourne</u>, 2014 U.S. App. LEXIS 3577, 2014 WL 715609, *2 (11th Cir. Feb. 26, 2014) ("[T]he record is clear that Flowers was vigorously resisting the officers' efforts to secure him. ... We do not second-guess these decisions where the amount of force applied was not grossly disproportional to Flowers' resistance," so officers were entitled to qualified immunity); <u>Harvey v. City of Stuart</u>, 296 F. App'x 824 (11th Cir. 2008) (use of force was reasonable where suspect actively resisted arrest and sustained stubbed toes, bruised knee and dislocated finger in the struggle); <u>Benton v. Hopkins</u>, 190 F. App'x 856 (11th Cir. 2006) (finding that officers were entitled to qualified immunity on excessive force claim where suspect refused commands and struggled against handcuffing, such that officers responded by pepper-spraying suspect in eyes and striking him with baton in legs and neck until he complied); <u>cf.</u>, <u>Priester</u>, 208 F.3d at 926-27 (denying qualified immunity to officer who allowed

police dog to attack arrestee who was already subdued and lying on ground); <u>Smith</u>, 127 F.3d at 1418-20 (denying qualified immunity to officer who broke arm of individual who "docilely submitted" to officer's request to "get down"); <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1199-1200 (11th Cir. 2002) ("As in <u>Slicker</u>, <u>Priester</u>, and <u>Smith</u>, the peculiar facts of this case are 'so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point.'").

An analysis of the second and third <u>Leslie</u> factors, however, are less obvious. Defendant claims that Plaintiff ran from him, fell three or four times, and then briefly struggled with him upon the placing of handcuffs. Defendant describes the struggle as Plaintiff resisting having handcuffs secured on him,

> by *pushing away* [Defendant Lee's] hands as [he] was trying to handcuff the Plaintiff.

(<u>Id</u>.) (emphasis added). In response to the "struggle," Defendant Lee states he -

> struck the Plaintiff twice in the side in an effort to restrain the Plaintiff.

(Doc. 50-1 at 2). In contrast, Plaintiff states he -

> was tackled from behind by defendants John Lee and Unknown Defendants 1 through 5 and [he] began to be kicked, punched in [his] face and body. After being beaten for nearly five minutes, some of the individual[s] withdrew from beating [him] and drew guns. As [he] was face down on the side walk, handcuffs were placed on [him].

(Doc. 22 at 3). Despite Defendant's claim that Plaintiff "pushed away" Defendant's hands while handcuffs were being placed, there is no evidence in the record that Plaintiff retaliated in any physical manner by hitting, kicking, or shoving Defendant, that Plaintiff verbally or physically threatened harm to Defendant, nor that Plaintiff possessed a weapon. Without evidence or allegations that Plaintiff exhibited any physical force or

threated harm to Defendant or another, Defendant's bone shattering force becomes disproportionate and excessive for the situation.

Additionally, the record is unpersuasive in showing the gravity of danger or threat of harm Defendant Lee perceived.  Plaintiff was not taken to jail after the seizure of him – despite possessing drugs, despite an outstanding warrant for arrest for a charge of second-degree assault, and despite eluding police and resisting arrest.  Rather, Plaintiff was charged, released, and taken to the hospital by ambulance (unescorted by police) and told to contact Officer Lee upon his release.  Moreover, the arrest report of Plaintiff on February 25, 2011, is contrary to the facts currently before the Court.  The report referencing the charges against Plaintiff noted, through check-marked boxes, that Plaintiff was sober at the time of arrest, that Plaintiff did not resist arrest, and that Plaintiff suffered no injuries during the arrest.  (Doc. 8 at 56).

Taking Plaintiff's version of facts as true, the force used by Defendant Lee appears excessive under the circumstances, and there remain disputes of fact regarding material issues necessary for determining the objective reasonableness of Defendant Lee's actions that will require an evidentiary hearing or a jury's determination.  The severity of the injuries suffered indicate that more than *de minimis* force was used against Plaintiff, and Defendant's conduct is "far beyond the hazy border between acceptable force [that every reasonable officer] had to know he was violating the constitution without caselaw on point."  Vinyard v. Wilson, 311 F.3d 1340 at 1355 (11th Cir. 2002).  Therefore, the Court denies Defendant Lee summary judgment on the claim of excessive force and qualified immunity.[13]

_____

[13]      Plaintiff has raised a claim of involuntary hospitalization.  (Doc. 13 at 26-27).  He

### E.    Failure to Intervene.

Plaintiff claims that in addition to Defendant Lee, other undercover officers were responsible for beating him or for not stopping the use of force.  Plaintiff alleges in his complaint that

> [t]he officers had actual knowledge of obviousness of assault and did not take pervasive action to stop the assault, that was apparent to any knowledgeable observer and had actual knowledge of substantial risk of serious harm that was caused to Jackson where the attack was observed, and or did not report the assault as all acted under the color of state law as a cover in capacity as law enforcement officer.

(Doc. 13 at 20-21).  While this specifies the constitutional wrong asserted, it fails to link the act to a particular defendant.  Plaintiff must show proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation.  Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995).  In the complaint and all supplemental pleadings, however, Plaintiff fails to identify any other officer by name.

In order to proceed on a claim against one of these officers, Plaintiff is required to provide specific identifying information because fictitious party practice is not permitted in federal court.  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (affirming the dismissal of John Doe guard pursuant to the general rule that fictitious party practice is not permitted in federal court inasmuch as no descriptive information was provided in the complaint to satisfy the exception); CSX Transp., Inc. v. United Transp. Union,  236

---

argues that but for the excessive abuse by Defendant, he would not have been transferred to the hospital by ambulance and would not have incurred hospital bills for which he is now responsible for paying.  (Id.).  This allegation is so closely intertwined with Plaintiff's excessive force claim that the Court determines it necessary deny Defendant Lee summary judgment on this claim at this time and carry the claim for involuntary hospitalization along with the excessive force claim.

F. App'x 562, 563 n.1 (11th Cir. 2007) ("the Federal Rules do not authorize suit against fictitious parties"), <u>cert. denied</u>, 522 U.S. 1243 (2008); <u>Featherstone v. Home Oil Co.</u>, 2011 WL 5978774, *1 n. 4 (S.D. Ala. Nov. 8, 2011) (subject to a limited exception, "fictitious party practice is not permitted in federal court"). The limited exception to allowing fictitious party pleading is "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" <u>Richardson</u>, 598 F.3d at 738 (quoting <u>Dean v. Barber</u>, 951 F.2d 1212, 1215-16 (11th Cir. 1992)). In this case, however, Plaintiff identifies defendant officers as five "other officers" who were present at the scene on February 25, 2011 (Doc. 13 at 4), then six "unknown agents" (<u>id</u>. at 5), and finally as seven "unknown undercover special drug force narcotic officer[s]" as being liable for failing to intervene when excessive force was used against him. (<u>Id</u>. at 10).

While the Court recognizes its duty to give a *pro se* plaintiff leeway in pleading, <u>Alba v. Montford</u>, 517 F.3d 1249, 1252 (11th Cir. 2008), it is also cognizant of the multiple opportunities Plaintiff has had to amend his complaint after acquiring the names of the additional officers on the scene February 25, 2011. Plaintiff has filed three complaints (docs. 1, 8, 13), a motion to supplement defendants that was denied as to unnamed defendants (doc. 22), a motion for production of documents (doc. 29)[14] that was

---

[14]    The motion filed on September 24, 2013, requested general documents related to the February 25, 2011 incident, but further specified the production of

1.  All logs, reports, rosters, pertaining to Officers working in the capacity of plain clothes agents Officer Jonathan Lee, on the date and time indicated within this action;

2.  All documents that evidence, mention or refer to the officers names and official position pertaining to the date and time indicated within this action;

3.  All documents that evidence, mention, or refer to the assault on plaintiff by Police Officers including but not limited to medical records, incident reports, statements and other investigative materials.

responded to by Defendant (doc. 33),[15] a supplemental motion for production of documents (doc. 53)[16] that was responded to by Defendant (doc. 63).  Despite numerous documents produced containing the names of officers on duty February 25, 2011, who worked alongside Defendant, Plaintiff has failed to amend his pleadings to reflect the identity of his intended defendants.  This makes it impossible for an intended defendant to by notified of the charges against him and impossible for him to answer Plaintiff's complaint.  It is, thereby, the opinion of the undersigned that Plaintiff's failure to identify the Doe defendants, despite ample time for discovery and supplementation of his pleadings, requires following binding precedent and disallowing the fictitious-party, and, thus, the claim for failure to intervene against them shall be dismissed.  See Moulds v. Bullard, 345 F. App'x 387, 390 (11th Cir. 2009) (Dismissal upheld where plaintiff was afforded the opportunity through granted discovery request to learn the defendants' names and failed to identify them.).

---

(Doc. 29 1-2).  Pursuant to this request, the Court ordered, *inter alia*, Defendant Lee to submit a special report "containing, where applicable, the sworn statements of all persons having knowledge of the subject matter of the complaint. . . .  Defendant [was] further directed, in the aforementioned Special Report, to **RESPOND** to Plaintiff's motion for production (doc. 29)."  (Doc. 30 at 1-2).

[15]     Defendant produced "a roster of individuals working with the Defendant on the evening of the incident made the basis of this suit, the Alabama Uniform Incident/Offense Report and Alabama Uniform Arrest Report associated with the incident and the Mobile Police Department Investigative Narrative regarding the incident."  (Doc. 55 at 1).  Furthermore, affidavits of four other officers were attached to the special report and served upon Plaintiff.  (Docs. 36-3; 50-2; 50-3; 50-4).

[16]     On December 25, 2013, Plaintiff requested the transcript and recording of a 911 call placed by a neighbor, Ms. Marilyn McCarty, who witnessed the incident and contacted the police.  (Doc. 53).  Defendant originally produced a compact disk of the call that Plaintiff was unable to utilize due to prison regulations.  (Doc. 61).  Subsequently, Defendant produced a transcript of the 911 call in compliance with the Court's order.  (Docs. 62, 63).

Therefore, it is recommended that summary judgment be granted and this claim be dismissed as it is alleged against persons not party to this action.

### E. Illegal Taking of Monies.

Plaintiff alleges Defendant Lee confiscated $1,400.00 from him during the search incident to his arrest on February 25, 2011, versus $860.00 claimed by Defendant. Plaintiff's complaint before the Court, however, articulates no additional details regarding this allegation, including, what constitutional right has been violated or the remedy Plaintiff seeks.[17] Therefore the Court assumes Plaintiff is requesting either $1,400.00 or the $600.00 difference be returned to him. Either way, the Court's determination is identical, as Plaintiff has failed to prove (or allege) the search was unconstitutional or that his due process rights were violated during the forfeiture hearing.

Plaintiff has failed to carry his burden of proving the search was illegal. The record is undisputed that Defendant observed Plaintiff holding a plastic bag that contained a substance Defendant believed was marijuana and witnessed what appeared to be a drug transaction between Plaintiff and a man in a white S.U.V. on February 25, 2011. Defendant then approached Plaintiff to investigate and Plaintiff fled on foot.[18]

---

[17] Plaintiff's earlier submitted pleadings included more details regarding the claim of illegal taking of money, although the allegations are conclusory and vague. (See Docs. 1, 8). However, given that: (1) the Court twice ordered Plaintiff to refile his complaint on the Court's § 1983 form and in compliance with Rule 8(a) of the Federal Rules of Civil Procedure, (2) explained to Plaintiff the need to "provide facts showing a defendant's involvement," (3) ordered Plaintiff to provide his own "version of facts to support [his] claim" (doc. 10 at 2), and (4) specifically instructed him that his "amended complaint [would] supersede his complaint (doc. 1) and amended complaint (doc. 8). . . . [And] Plaintiff, therefore, shall not rely on them," (doc. 10 at 3), the operative complaint is Plaintiff's final amended complaint.

[18] While a suspect's flight, alone, is not proof of wrongdoing, the nature and duration of the flight are relevant considerations. See United States v. Franklin, 323 F.3d 1298, 1301-02 (11th Cir. 2003) (explaining that the nature and duration of the defendant's

Defendant also states he saw Plaintiff throw the plastic bag during the foot chase and that bag was later recovered and the substances within tested positive for both marijuana and crack cocaine. (See generally Doc. 36-1). Plaintiff does *not* argues that Defendant lacked probable cause to arrest or stop him, and Plaintiff does *not* oppose Defendant's claims regarding the possession of drugs in his complaint (doc. 13), opposition to Defendant's answer (doc. 52), or opposition to respondent's answer (doc. 65).[19] Therefore, once the foot chase ended by Defendant capturing and detaining Plaintiff, Plaintiff was effectively and legally seized under the Fourth Amendment. Plaintiff does not argue in his complaint that the search was illegal and the Court has only evidence before it proving it to be a valid search incident to arrest.

Consequently, the confiscated money was turned over the State of Alabama who initiated a forfeiture proceeding against Plaintiff. The complaint for forfeiture stated:

> (2) On February 25, 2011, within Mobile County, Alabama, the above described currency was seized by Officers of the City of Mobile Police Department, Narcotics Unit, acting within their capacity as, and in exercise of their official duties as, law enforcement officers of the State of Alabama, while conducting routine patrol during Mardi Gras in the area of

---

flight combined with his evasive actions of climbing multiple fences provided the reasonable suspicion necessary for the police officers to stop the defendant). "[D]eliberately furtive actions and flight at the approach of strangers or law officers[,] . . . when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, . . . are proper factors to be considered in the decision to make an arrest." Sibron v. New York, 392 U.S. 40, 66-67, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). In this action, Defendant Lee saw possession and a possible sell of drugs, followed by Plaintiff's running and discarding of the bag of drugs. The totality of the circumstances evidences probable cause to arrest. See United States v. Franklin, 694 F.3d 1, 7 (11th Cir. 2012) (Probable cause is examined objectively within the totality of the circumstances; it exists when "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'").

[19]     When a party "fails to properly address another party's assertion of fact as required by Rule 56(c) [of the Civil Rules of Procedure] the court may . . . consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(c)(2).

St. Michael Street and Dearborn Street, in Mobile, which is within Mobile County, Alabama.

(3) Said seizure was incident to the arrest **CEDRIC JACKSON**, who was in possession of Marijuana and Crack Cocaine, controlled substances, in violation of §13A-11-9, §32-5A-193, and §13A-10-41 of the Code of Alabama (1975) Loitering for the Purpose of Drug Activity, Eluding Police, and Resisting Arrest.

(4) That **CEDRIC JACKSON** was in possession of the currency at issue at the time of the incident and the State alleges that the currency at issue was furnished in exchange for a controlled substance in violation of any law of this State, that it is proceeds traceable to such an exchange, and/or that it was used, or intended to be used to facilitate any violation of any law of this State concerning controlled substances;

(5) The State further alleges on the above listed date, Officers were in the area of St. Michael Street and Dearborn Street conducting patrol during Mardi Gras in Mobile County, Alabama. Officers observed Respondent making a drug transaction to an unknown subject in a sport utility vehicle. Respondent was observed holding a clear plastic bag containing marijuana. Officers attempted to arrest Respondent, who fled on foot and threw the bag of marijuana on the ground. Approximately 15 (fifteen) grams of marijuana and 5 (five) grams of crack cocaine were recovered. $860.00 (Eight Hundred Sixty and No/100 Dollars) was found on Respondent's person and was in denominations consistent with someone involved in illegal narcotic activity.

(Doc. 8 at 72). Plaintiff clearly received notice of the forfeiture action by summons and complaint, as it is Plaintiff who produced copies of all forfeiture documents to the Court, and Plaintiff does not argue lack of notice. (Doc. 8 at 65-73). Without the appearance of Plaintiff, the Circuit Court of Mobile found probable cause that the money seized from Plaintiff was traceable to drug related activity; therefore, pursuant to §20-2-93 of the Code of Alabama (1975) the money was rightfully condemned and forfeited to the State of Alabama after Plaintiff failed to answer or defend the complaint against him for the money. (Doc. 8 at 72; 71 (Order of Final Judgment)).

The Court finds Plaintiff's allegation of illegal taking of funds is a collateral attack on a state court judgment that is not properly brought before this Court. The Supreme Court has determined a federal district court has "no authority to review final judgments of a state court in judicial proceedings," <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 ((1983), "even if said judgment was wrong." <u>Nicholson v. Shafe</u>, 558 F.3d 1266, 1271 (11th Cir. 2009) (citation omitted). This doctrine was formed to preclude "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Ind. Corp.</u>, 544 U.S. 280, 284 (2005). In the Eleventh Circuit, a claim is barred in federal court where:

> (1) the party in federal court is the same as the party in state court, <u>see Roe v. Alabama,</u> 43 F.3d 574, 580 (11th Cir. 1995); (2) the prior state court ruling was a final or conclusive judgment on the merits, <u>see David Vincent, Inc. v. Broward Cnty.</u>, 200 F.3d 1325, 1332 (11th Cir. 2000); (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding, <u>see Dale v. Moore</u>, 121 F.3d 624, 626 (11th Cir. 1997) (per curiam); and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment, <u>see Goodman ex rel. Goodman v. Sipos</u>, 259 F.3d 1327, 1332 (11th Cir. 2001).

<u>Amos v. Glynn County Bd. of Tax Assessors</u>, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003).

In this case, Plaintiff was the defendant in the forfeiture action brought by the State of Alabama in April 2011. (Doc. 8 at 65, 72). A summons, copy of the complaint, and pre-trial order was mailed to Plaintiff on April 22, 2011. (<u>Id</u>. at 65). The summons put Plaintiff on notice that he "MUST TAKE IMMEDIATE ACTION TO PROTECT [HIS] RIGHTS." (<u>Id.</u>). Plaintiff was warned that if he did not file a timely answer to the

complaint "A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST [HIM] FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT." (Id.). A final Order and Judgment was executed in the matter on August 15, 2011 against Jackson. (Doc. 8 at 69, 71). Accordingly, it appears to the Court, based on the Circuit Court documents presented by Plaintiff, that Plaintiff was clearly aware of the complaint against him for the forfeiture of $860.00 and failed to answer the complaint or defend himself in the matter. There is no doubt that Plaintiff was afforded due process involving the forfeiture process. And it was at the forfeiture trial that Plaintiff had the appropriate opportunity to argue this claim, not in a § 1983 action after the finality of the state court judgment. See also, Barnett v. York Cnty,. No. 1:CV-11-0906, 2011 U.S. Dist. LEXIS 78067, *45 (M.D. Penn. June 24, 2011) (District Court determined it was barred by Rooker-Feldman Doctrine from returning forfeited money to state.) (cites other cases within Third Circuit holding same).

The seizure of any and all funds confiscated from Plaintiff on February 25, 2011 have been forfeited pursuant to a valid final judgment against Plaintiff. (Doc. 8 at 71). Plaintiff's to attempt to disrupt that judgment in anyway is an action that must be attempted in a state court, as this Court lacks jurisdiction to rule on such a claim. Therefore, Defendant Lee is granted summary judgment on the claim of illegal taking of monies.

IV. **CONCLUSION.**

Based upon the foregoing reasons, it is recommended that that Defendant's motion for summary judgment be **granted, in part, and denied, in part**. The undersigned recommends that the Court **deny** Defendant Lee's motion for summary

judgment as to the affirmative defense of qualified immunity, the claims of excessive force and involuntary hospitalization, and **grant** summary judgment as to the claim of illegal taking of monies and the failure to intervene.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." Dupree v. Warden, Attorney Gen., State of Ala., 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 13<u>TH</u> day of August, 2014.


/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE